STATE CONSOL. OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 6968.

Circuit Court of Appeals, Ninth Circuit.
Aug. 21, 1933.

Frank Mergenthaler, of Los Angeles, Cal., for petitioner.

Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and John R. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Petitioner seeks review of an order of the Board of Tax Appeals sustaining the Commissioner's rejection of its claim for a certain refund. The claim resulted from the filing of amended returns for 1920 and 1921 in which it was asserted that certain expenditures for those years, originally charged to accounts receivable, should be allowed as deductions.

The expenditures were made in connection with oil well drilling operations under a contract by the terms of which petitioner was to drill wells on two lots belonging to the other party to the contract; the proceeds resulting from any oil and gas discovered were to be applied, first, to reimbursing petitioner for its expenses in drilling, equipping, and operating the wells; second, to paying the landowner $1,400; thereafter petitioner was to receive a deed to a one-half interest in the property which was thenceforth to be jointly operated.

The contract was in effect during 1920 and 1921. Petitioner expended certain sums for well equipment and for so-called "intangible drilling expenses"; the latter including such items as labor, freight, and hauling, repairs, fuel, light and water, and other miscellaneous expenditures. The expenses for the equipment and for the intangible operations were originally charged to accounts receivable.

In August, 1922, the parties to the contract entered into a superseding agreement "putting the property on a basis of one-sixth royalty." Petitioner then adopted the practice of charging off "intangible drilling expenses" to expense in the year in which they were incurred, a practice already followed in connection with its other projects.

The Commissioner conceded petitioner's claim for an allowance for depreciation in respect to the equipment items for 1920 and 1921. The controversy before the Board and here centers around petitioner's claim for a refund on the basis of charging intangible drilling operations to deductible expenses instead of to accounts receivable for those years.

Respondent's contention that the expenditures would normally be regarded as capital investment [see Blockton Cahaba Coal Co. v. United States, 24 F.(2d) 180, 181 (C. C. A. 5th, 1928), J. K. Hughes Oil Co. v. Bass, 62 F.(2d) 176, 177 (C. C. A. 5th, 1932)], and therefore not deductible from current income, is not challenged. But petitioner finds authority for deducting the expenditures as operating expenses in the provisions of article 223, Treasury Regulations 45 and 62.[1] It argues that, inasmuch as it had adopted the practice of treating intangible drilling operations as deductible operating expenses in other projects in years prior to 1920 and 1921, it was bound under the provisions of the regulations to treat them as such for the years in question; that in these circumstances the treatment of the expenditures as accounts receivable was improper.

The Commissioner contends, however, that the Regulations were not intended to apply to one who drills a well upon land in performance of a contract to purchase an interest therein. In this contention we concur. The expenditures in controversy were

[1] Treasury Department Regulations 45, promulgated under the Revenue Act of 1918 (substantially similar to Regulation 62, article 223, promulgated under Act of 1921), provides:

"Art. 223. Charges to Capital and to Expense in the Case of Oil and Gas Wells.—Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc. in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may, at the option of the taxpayer, be deducted as an operating expense or charged to the capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling non-productive wells may, at the option of the operator, be deducted from gross income as an operating expense, or charged to capital account returnable through depletion and depreciation, as in the case of productive wells. An election once made under this option will control the taxpayer's returns for all subsequent years. * * * *"

merely to be exchanged for a capital asset or to be recouped out of the land. Nothing in the Regulations requires their application to such a case, and the burden is on the petitioner to show that the Commissioner erred in denying their application here. In this, petitioner has failed. The argument that the expenditures are similar in principle to expenditures made in drilling on one's own or on leased land, a situation concededly within the Regulations, is without merit. The burden upon petitioner, as the court said in the somewhat analogous case of J. K. Hughes Oil Co. v. Bass, supra, "to overcome the prima facies of the action of the Commissioner is not discharged by a showing that the treatment he asks for is no more unreasonable * * * than one which, under other circumstances, has been actually accorded * * * by the Commissioner."

 2. Petitioner complains, too, of the adoption by the Board of a judgment proposed by the Commissioner because it reduced petitioner's invested capital below the figure stated in the sixty-day letter.

Judgment was proposed by the Commissioner pursuant to rule 50 of the Board.[2]

No question of reduction of invested capital was in issue before the Board except in so far as certain claims for depreciation allowances affected it. The reduction in question was in respect of a certain dividend adjustment, obviously an afterthought of the Commissioner.

The dividend adjustment with the resulting reduction in petitioner's capital is in fact the basis for an additional claim on the part of the Commissioner; it injected a new issue into the case. Such a claim may be asserted if the statutory provisions[3] as to procedure are satisfied. In this case, they clearly were not.

But the argument is made that petitioner's failure to oppose the proposed computation within the time prescribed by rule 50 precludes any objection to the denial of its later motion to vacate the order of final determination. With this contention we cannot agree. The same argument was made in Davison v. Commissioner, 60 F.(2d) 50 (C. C. A. 2d, 1932).[4] There, too, the Commissioner sought to obtain additional tax by asserting a deficiency for the first time in the proposed computation under rule 50. There the court said [at page 52 of 60 F.(2d)]: "The * * * deficiency was increased by the Board although the Commissioner had failed to assert any claim for an additional deficiency as required by section 274(e) of the Revenue Act of 1926 (26 USCA § 1048c). This was clearly an error, and cannot be justified under Rule 50 of the Board's rules of practice. Rule 50 requires the computation of deficiency to be in accordance with the decision on the issues presented at the hearing of the proceedings on the merits. New issues other than those relating to computation cannot be raised upon computation of the tax under Rule 50."

We concur in this statement of the law.

Remanded to the Board of Tax Appeals for proceedings consistent with this opinion.

---

[2] "Rule 50.—Settlement

"When the Board determines the issues in any proceeding and withholds decisions of the deficiency or overpayment for later computation, the parties shall, if they are in agreement as to the amount of the deficiency or overpayment, in accordance with the report of the Board, file with the Board an original and two copies of a computation showing the amount for entry of decision forthwith. If the parties are not in agreement as to the amount to be entered in the decision, either of them may file with the Board a computation of the deficiency or overpayment believed by him to be in accordance with the report of the Board. The clerk will serve a copy thereof upon the opposite party and will thereupon place the matter upon the day calendar for hearing in due course and give the usual notice. If the opposite party fails to file objection, accompanied by an alternative computation, within five days prior to the date of such hearing, or any continuance thereof, the deficiency or overpayment shown in the computation already submitted shall be taken to be correct and decision thereon will be entered. If the parties submit different computations and amounts, they will be afforded an opportunity to be heard thereon on the date fixed, and the Board will determine the correct deficiency or overpayment and enter decision.

"Any hearing under this rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This rule is not to be regarded as affording an opportunity for rehearing or reconsideration."

[3] See section 274(e), Revenue Act of 1926, 44 Stat. 56, U. S. C. title 26, § 1048c (26 USCA § 1048c).

[4] The court's statement of the facts in that case leaves it uncertain whether or not petitioner opposed the computation offered by the Commissioner. However, in the judgment of the Board as it appears in the transcript of the record, it is stated that there was no opposition to Commissioner's proposed computation.