**HELVERING, Com'r of Internal Revenue v. CANISTEO MINING CO.**

No. 10081.

Circuit Court of Appeals, Eighth Circuit.

March 4, 1935.

Louise Foster, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

A. L. Agatin, of Duluth, Minn., for respondent.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The respondent is a mining corporation with principal office in Duluth, Minn. In 1905, at a cost of $10,472, it acquired a fifty-year mining lease which contained the following option clause:

"Article Twelve.

"Surrender.

"The Canisteo Company may terminate this lease and the estate hereby granted on the first day of January in any year, by giving the Landlord written notice of its election so to do at least six months prior to the day upon which the lease is so terminated, and by paying all moneys and performing all the provisions on the part of the Canisteo Company required by this lease up to the date of such termination, including all amounts which shall have accrued on the first day of such January but which shall not be payable until thereafter; and thereupon all obligations hereunder of the parties shall cease and determine."

On June 29, 1926, respondent served a written notice of its intention to terminate the lease on January 1, 1927, pursuant to the provisions of said Article Twelve. It did terminate and surrender the lease on the latter date, and claimed a net loss of $10,472.-88 suffered in 1927. Accordingly, under the provisions of the Revenue Act of 1926 it claimed a deduction in this amount in its income tax return for 1929. This deduction was disallowed by the Commissioner, resulting in an income tax deficiency for the year 1929 of $1,152.01. The Commissioner concedes that the loss was sustained, but claims that it was suffered in 1926 instead of 1927, and therefore was not deductible in 1929.

The Board of Tax Appeals reversed this determination of the Commissioner, and held that there was no deficiency for the year 1929. As stated in the government brief, the question presented is: "Whether the loss sustained by the taxpayer because of its cancellation of a lease upon notice given in 1926 was a net loss which could be deducted from the taxpayer's income for 1929."

The contention of the government is that the formal termination of a lease does not necessarily determine the loss; that a loss should be deducted in the year when it is actually realized, and that it is sufficient that the loss be reasonably certain "without waiting to ascertain if remote contingencies will ever become actualities." It is true that this rule has been announced by the Supreme Court (Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010), and is, of course, applicable as a practical test in cases where the loss is reasonably certain, and where no special circumstances exist to furnish a limitation. We think the present case presents such circumstances. There was here no right of abandonment except under the specific terms contained in the lease itself. The lease could be terminated only on the first day of January in any year, by giving written notice at least six months prior to the day upon which, not before which, the lease is so terminated. The lessee must pay all moneys and perform all the provisions required on its part "up to the date of such termination, including all amounts which shall have accrued on the first day of such January but which shall not be payable until thereafter; and thereupon all obligations hereunder of the parties hereto shall cease and determine." By following the terms of the lease, essential to the right of termination, and by giving the six months' notice required, we do not feel that respondent is restricted to the date when its election was made, but rather that such intention coincides with the date of formal termination. The lease expressly provides that it cannot be terminated at will. Not only must notice be given, but the date fixed must be on the first day of January in any year. Until the expiration of this prescribed period the lessee is bound by the terms of the lease and all its obligations thereunder. The Treasury Regulation in force provided that "Losses must be evidenced by closed and completed transactions." The fact that departure from this insistence has been permitted in the interest of the deserving taxpayer, in the absence of obvious tax evasion, should not be invoked to penalize one who has proceeded openly in accordance with the terms of its contractual obligations. The Board of Tax Appeals, speaking of this contention of the Commissioner, said: "The infirmity of this contention is that, under its terms, the lease was terminable only on the first day of January and, by notice served in advance, at least six months prior thereto. The notice which the petitioner served under that provision of the lease fixed January 1, 1927, and not December 31, or any other date in 1926, as the day it was to be terminated by petitioner."

It conceded that respondent's loss may have actually accrued in 1926 or even earlier when it made its first investment, never recovered, "but we have uniformly held in cases of this character that before the taxpayer can claim a loss of such an investment, the transaction must be closed by some legal bar which precludes a future recovery for the loss claimed. Appeal of A. J. Schwarzler Co., 3 B. T. A. 535; Henry S. Parker et al. v. Com'r, 11 B. T. A. 1336. In this view the transaction was not closed until on midnight, January 1, 1927, and we, therefore, hold that petitioner's loss of his investment must be allocated to the year when its rights expired, rather than in the former year when it decided upon the abandonment. Boggs Oil Co. v. Com'r, 19 B. T. A. 940; Macon Oil & Gas Co. v. Com'r, 23 B. T. A. 54; S. W. Forrester v. Com'r, 23 B. T. A. 942."

The fact that respondent had not deemed it profitable or practicable to continue mining operations during the autumn and winter of 1926, after notice of termination and prior to the crucial date of January 1, does not, in our judgment, add force to the government's contention. We have given consideration to the cases cited in the brief of petitioner and do not find that they militate against the conclusion reached by the Board of Tax Appeals under the facts found and the circumstances disclosed in the instant case.

In that brief counsel for the government say: "The entire amount of $10,472.88 was a capital investment in the lease and amortizable over its life. Where conditions arise which vary the life of the lease, the unamortized investment may be spread over the remaining life after such change."

It is contended, therefore, that this theory would warrant charging off the entire

loss claimed ratably over the period from June 29, 1926, to January 1, 1927, or allowing the entire sum as a deduction in computing income for 1926. This contention was not raised in the Commissioner's notice of deficiency nor in the proceedings before the Board of Tax Appeals. It is urged here for the first time, and is not properly before this court on the Commissioner's petition to review the decision of the Board. Helvering, Commissioner v. Brandeis & Sons (C. C. A. 8) 75 F.(2d) 487, and cases cited.

However, it is to be noted that the rule invoked and recognized by the Board of Tax Appeals in some previous decisions is applicable to such classes of property as suffer depreciation through lapse of time, rather than to mines which are depleted, not by time, but by units of tons of ore removed or paid for. The distinction between such classes of property is pointed out in Weiss v. Wiener, 279 U. S. 333, 336, 49 S. Ct. 337, 73 L. Ed. 720.

We conclude that the order of redetermination by the Board of Tax Appeals was right, and it is approved and affirmed.