## UNITED STATES v. SENTINEL OIL CO.

### No. 9239.

Circuit Court of Appeals, Ninth Circuit.

Feb. 19, 1940.

Rehearing Denied March 28, 1940.

---

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Ugo Caruso, and Louise Foster, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Grainger & Hunt and Reuben G. Hunt, all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellee company, a California corporation, entered into agreements with the owners of three separately owned tracts of real property, looking toward the drilling of an oil well on each of said tracts. Thereby appellee acquired an undivided interest in the fee to each of said three tracts and agreed to drill an oil well on each tract. By the agreements the common fee owners were to receive a percentage of the oil and gas produced from the wells, equal to the proportion of the fee retained by them.

As set out in the agreed statement of the case, "For the purupose of raising the money with which to drill the oil wells in accordance with the understanding by which it had obtained the conveyance to itself of the undivided interest in the fee to the several tracts", appellee sold and by grant deed conveyed to members of the public, portions of its undivided interest in the fee, which it called units, each of which was equal to an undivided one per cent of the entire fee. The aggregate sum received from these sales was $61,172.50. This sum was included in appellee's gross income for the calendar year 1935 by the examining Revenue Agent. At the hearing upon appellee's objection to the claim of the United States for 1935 income taxes it was conceded by the government counsel that the sum of $61,172.50 received from the sales of percentages of the fee should, for the purpose of determining taxable net income, be reduced by the amount that the percentages of the fee sold had cost the appellee. This cost was determined to be the proportion of the cost of the drilling of the oil wells allocable to the percentages of the fee sold.

During the calendar year 1935 the appellee company had an admitted gross income, from sources other than sales of the said percentages of the fee in said property, of $52,163.91, and deductions now conceded to be deductible from said gross income of $37,170.33.

Appellee company completed the drilling of two producing wells and one dry and worthless well, known as Sentinel No. 3, in 1935. Subsequently, the operation of the two producing wells was enjoined by the California Superior Court and they were plugged and abandoned. The value of the portions of the fee in the three tracts retained by appellee company, and still in possession and ownership of the company, at the end of the year 1935 and subsequently has not exceeded $500.

On September 19, 1935, the taxpayer filed a petition under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which petition was approved by the court. In said proceedings the taxpayer-debtor was authorized to carry on the business of the debtor with all the powers of a trustee appointed pursuant to said Section 77B, and to institute, prosecute and defend all actions in its judgment necessary for the protection or preservation of the estate of said debtor. The Commissioner of Internal Revenue filed a claim for 1935 income taxes which it determined to be due. After a hearing by a special master, the claim was disallowed in full, and this action was confirmed by the court. The government appeals and the taxpayer-debtor appears as appellee in this action.

This appeal relates only to the tract on which the dry hole was drilled.

The Commissioner's claim for 1935 income taxes is based upon the following theory: It is contended that the cost to the appellee of the undivided fee to said tract retained by the appellee is the percentage of the drilling cost of said well allocable to the percentage of the fee retained, or $25,418.66. From this it is argued that the appellee is not entitled to deduct any part of the loss occasioned by the dry hole, until it sells or otherwise disposes of the remaining portion of the fee.

The appellee contends that, notwithstanding the fact that it is still the owner

of 57¾% of the fee of the said tract, it should be allowed to deduct the loss from its gross income. Reliance is had upon the case of Bliss v. Commissioner, 5 Cir., 1932, 57 F.2d 984, in which it was held that the cost of drilling an unproductive oil well upon property owned by the taxpayer is deductible from gross income as a business expense or business loss.

In this connection, the District Court found that the consideration for the sale of the land was not the drilling of the oil well, but the right to receive a percentage of the proceeds from the production of the well, if any. In other words, the theory is that the appellee received the title to said undivided percentage of the fee in exchange for its promise to pay the grantor a percentage of the proceeds from oil produced; that the appellee in that case would have drilled an oil well on its own land, and when it became clear that the result was nothing but a dry hole, a loss would have been sustained.

The finding of the District Court as to the consideration for the sale of the land as the "right to receive a percentage of the proceeds from the production of the well, if any" is assigned as error by the government. It contends that the money expended by the appellee in drilling the wells was a capital investment and was the purchase price paid by it for the conveyance to it of the undivided interest in the fee to the lands upon which the wells were drilled.

Perhaps it is unfortunate that we are not furnished with the text of the agreement between the oil company and the original owners of the property, but in the circumstances we cannot go behind the following, taken from the agreed statement of the case: "The consideration for the transfer * * * was an understanding between the grantor and the grantee that the latter would proceed to drill an oil well on each tract."

We think this statement compels the conclusion that the drilling costs constituted the purchase price for the undivided interest in the land acquired by appellee, and represented a capital investment. The appellee's investment was therefore in the land, and title to that land remained in appellee throughout the taxable year.

We have noted the contention of the appellee at the time that the Revenue Agent attempted to include in its gross income for the year 1935 the sum received from the sales of undivided interests in the fee. At that time it was urged, and the government counsel conceded, that the amount received from the sale of percentages should be reduced by the amount that those percentages had cost the appellee. Appellee at that time was arguing that the drilling costs did constitute the purchase price paid by it for the conveyance to it of the interest in the land. It cannot successfully make directly opposite claims consistent only with the advantage reverting to it.

This court has already spoken upon the main point in this case in State Consolidated Oil Co. v. Commissioner, 9 Cir., 1933, 66 F.2d 648. There the oil company entered into a contract with the owner of land in which it was provided that the company would drill an oil well. The proceeds from the oil produced were to be applied first to reimburse the company for drilling expenses, and then to pay the landowner $1,400. Upon this $1,400 being paid, the oil company was to receive a deed to an undivided one-half interest in the property, and thereafter the proceeds from the well were to be divided equally between the co-owners. In answer to a contention of the company that the cost of drilling the unproductive well should be deductible as an operating expense, this court said, 66 F.2d at page 649: " * * * petitioner finds authority for deducting the expenditures as operating expenses in the provisions of article 223, Treasury Regulations 45 and 62. * * * The commissioner contends, however, that the Regulations were not intended to apply to one who drills a well upon land in performance of a contract to purchase an interest therein. In this contention we concur. The expenditures in controversy were merely to be exchanged for a capital asset or to be recouped out of the land. Nothing in the Regulations requires their application to such a case, and the burden is on the petitioner to show that the Commissioner erred in denying their application here. In this, petitioner has failed. The argument that the expenditures are similar in principle to expenditures made in drilling on one's own or on leased land, a situation concededly within the Regulations, is without merit."

Appellee attempts to distinguish the State Consolidated Oil case from the in-

stant one, by the fact that in the former case title to the property was not to pass until after the property owner had received his $1,400 from the proceeds of the well, while in the instant case title passed upon the execution of the contract. We do not think that this distinction changes the situation. In both cases the drilling expenditures were the consideration for the passing of title to the land.

Appellee urges, however, that even assuming that the investment was in the land, a sale is not the only possible identifiable event which can fix and determine a loss, and that since substance and not mere form governs in determining deductible losses, the loss should be allowed in the instant case. Many cases are cited by appellee to the effect that when losses are so reasonably certain in fact and ascertainable in amount as to justify their deduction, they should be allowed. However, it is conceded that the portions of the fee and the three tracts retained by the appellee at the end of the year 1935 were worth not to exceed $500. We are not advised as to the value of the tract involved in this appeal, but it is apparent that it was not valueless. It is well settled that the extent to which a deduction may be taken is a matter of legislative grace. Bagnall v. Commissioner, 9 Cir., 1938, 96 F.2d 956, 957. True, with respect to worthless debts, the statute allows a deduction for partial worthlessness. However unfortunate it may be, there is no corresponding provision with respect to other losses. Consequently, a loss, other than a worthless debt, must be complete through worthlessness, or through a final disposition. Neither of those conditions existed here.

In Coalinga-Mohawk Oil Company v. Commissioner, 9 Cir., 1933, 64 F.2d 262, 263, certiorari denied 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 553, we held that a taxpayer could not deduct the difference between the cost and salvage value of land purchased as potential oil land in determining the income tax for the year during which it still owned the land. It is upon this theory that the so-called Florida land boom cases were decided. Greenleaf Textile Corp. v. Commissioner of Internal Revenue, 26 B.T.A. 737, affirmed without opinion, 2 Cir., 65 F.2d 1017. In the final analysis, appellee is attempting to take just such a deduction.

Reversed.