## HUNT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10551.

Circuit Court of Appeals, Fifth Circuit.

May 17, 1943.

Clark G. Clinton and Ralph B. Shank, both of Dallas, Tex., for petitioner.

Joseph M. Jones, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

Hassie Hunt is engaged in the business of developing and operating oil and gas leases. In his income tax return for 1939 he deducted as intangible drilling and development costs the sum of $106,567.33 expended by him during the tax year in connection with the drilling of six oil wells upon five leases. The wells were drilled by Hunt with his own labor, equipment, and employees. The Commissioner disallowed the deduction on the ground that the development costs were capital expenditures and not deductible as expense. In sustaining the determination of the Commissioner, the Board of Tax Appeals found that part of the consideration given in exchange for the interest acquired by Hunt in each of the leases was the agreement to drill, and the drilling of, the respective well or wells, and that the drilling costs, therefore, "represent capital investments recoverable through deductions for depletion and not for current expense."

In his petition for review the taxpayer contends here as he did before the Board that he was entitled to deduct the drilling expenses under Treasury Regulations 103,

Sec. 19.23(m)-16, or under Sec. 23(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1).

Decision turns upon whether or not the wells upon which the deductions are claimed were drilled as consideration for the assignment to Hunt of interests in the leases; for if the wells were drilled as consideration for the assignments, the drilling and development costs are not deductible either under the regulations or the statute, but must be treated as a capital expenditure. Hardesty v. Commissioner, 5 Cir., 127 F.2d 843; Commissioner v. Rowan Drilling Co., 5 Cir., 130 F.2d 62.

Hunt acquired interests in the leases and drilled wells in 1939, deducting the following amounts as "drilling costs":

| | |
|---|---|
| Coyle Lease (Louisiana) | $ 16,356.83 |
| Gardner Lease (Louisiana) | $ 16,132.04 |
| Holloway-Davis Lease (Louisiana) | $ 15,437.71 |
| McWilliams Lease (Arkansas) | $ 44,300.46 |
| Johnson Lease (Mississippi) | $ 14,340.29 |
| Total | $106,567.33 |

The Coyle and Gardner Leases were made to Ohio Oil Company, which "for the consideration and upon the terms and conditions" set out in contemporaneous contract and agreement assigned them to Penrod Drilling Company. The contract and agreement provided for the drilling of wells on the leases within a specified time. Penrod Drilling Company assigned the leases to Hunt "for the consideration of Hassie Hunt, individually, assuming the obligations of the Assignor". Hunt thereafter complied with the drilling obligations and completed a well on the Coyle Lease on August 15, 1939, and a well on the Gardner Lease on September 14, 1939.

The Holloway-Davis Lease was acquired by Hunt by assignment from Hunt Oil Company of its working interest in the Davis Lease, and by assignment from Ohio Oil Company of its interest in the Holloway Tract. The assignment from Ohio to the taxpayer was "for the consideration and upon the terms and conditions fully set out in Contract and Agreement executed concurrently herewith", which contract and agreement provided that the assignee was to secure a pooling agreement for drilling and proceed to commence drilling a well on the combined tract before December 1, 1939. The pooling agreement was secured,

and Hunt completed a well on the forty acre tract on December 19, 1939. The taxpayer owned one-half of the forty acre tract, the Davis Lease, by virtue of the assignment from Hunt Oil Company, which assignment was not made in consideration for the drilling of a well. Since the drilling of the well was in development of the entire Holloway-Davis Tract, of which Hunt owned one-half acquired without drilling consideration and one-half acquired in consideration for the drilling of a well, one-half of the intangible drilling and development costs of the well should be attributed to the Holloway Tract as consideration and not deductible as expense, and one-half of such costs should be attributed to the Davis Tract and allowed as deductible expense under the option of the regulation. Hunt acquired a one-half interest in the McWilliams Lease from Hunt Oil Company for a cash consideration of $10,000. He acquired the other one-half interest in the lease from Seaboard Oil Company by an instrument which provided no cash consideration but which "for the considerations and covenants to be paid, kept and performed" obligated the assignee to drill and complete a well on the tract at his own expense before April 1, 1940. The well on this lease was completed as a producer on December 13, 1939. Cf. Commissioner v. Rowan Drilling Company, supra, which points out at page 63 that "the ownership of oil in place is a capital asset, and that the acquisition price of the asset, whether paid in cash or services, is a capital investment that may not be treated as a business expense for income tax purposes, but must be recouped by depletion deductions from gross income". The McWilliams Lease presents a situation where a capital asset has been acquired one-half for cash, one-half for services. Since the drilling of the well was in fact in development of the entire interest in the McWilliams Lease, we hold that the taxpayer was entitled to deduct one-half of the intangible drilling and development costs as expenses incurred in developing the one-half interest which he acquired for cash, and that the other one-half of such costs must be treated as consideration for the acquisition of Seaboard's one-half interest in the lease and may not be deducted as business expense but must be treated as a capital investment.

The Johnson Lease was acquired by the taxpayer in an assignment of eight leases from John M. Starke "for and in consid-eration of the mutual covenants, agreements and undertaking hereinafter set forth. * * *" In the instrument Hunt agreed to commence the drilling of two wells within a specified time. Drilling of both wells commenced in December, 1939, and the wells were completed as producers in January, 1940.

The contracts of assignment make it clear that Hunt acquired his interests in the Coyle, Gardner, and Johnson Leases, and one-half interests in the Holloway-Davis and McWilliams Leases in consideration of his agreement to drill oil wells. In keeping with the contracts the wells were drilled in return for the interests in the leases, and Hunt thereby acquired capital assets. The assignments of these interests to him were fundamentally and inextricably conditioned upon his drilling of wells and the immediate development of the named oil properties. The drilling of these wells was the consideration paid for the acquisition of capital assets, and the drilling costs, other than one-half of those on the Holloway-Davis and McWilliams Leases, are not expenditures deductible in bulk, but are "investments in a capital asset as to which depletion deductions alone are allowable". Commissioner v. Rowan Drilling Company, 5 Cir., 130 F.2d 62, 65.

■ Except as to one-half of expenses on the Holloway-Davis and McWilliams Leases, the record supports the finding of the Board that the drilling of the wells was the consideration for the assignment of the lease interests to the taxpayer. Accordingly, the taxpayer was not entitled to the claimed deductions on the Coyle, Gardner, and Johnson Leases, or to one-half of the claimed deductions on the Holloway-Davis and McWilliams Leases, either under the Treasury Regulations 103, Sec. 19.23(m)-16, or Sec. 23(a) (1) of the Internal Revenue Code. The Rowan and Hardesty Cases, supra; United States v. Sentinel Oil Co., 9 Cir., 109 F.2d 854; State Consol. Oil Co. v. Commissioner, 9 Cir., 66 F.2d 648.

The decision of the Board will be modified to allow deduction of one half of the intangible drilling and development costs on the Holloway-Davis and McWilliams Leases.

As modified the decision is affirmed.

SIBLEY, Circuit Judge (concurring specially).

The Regulation, of many years standing, which purports to give the "taxpayer" an "option" to treat as expense or as capital investment "all expenditures for wages, fuel, repairs, hauling, supplies, etc. incident to and necessary for the drilling of wells and the preparation of wells for the production of oil and gas", does not mention lessor and lessee, or assignor and assignee, or owner and "turnkey contractor". Any "taxpayer", according to its broad language, has the option. But I do not see where the statutes have authorized an option to be given to anyone. Internal Revenue Code, Sect. 23(a) (1), 26 U.S.C.A. Int.Rev.Code, § 23(a) (1), repeating what has long been the statutory language, allows a deduction of expenses in carrying on any trade or business; but what is in fact a capital investment is not an expense, and is expressly denied deduction by Sect. 24(a) (2). No option is provided.

This Regulation has not been attacked by the taxpayers because favorable to them. The Treasury Department instead of modifying or withdrawing the Regulation, has, with the aid of the Courts, whittled it down by many distinctions, reaching, I think, not logically satisfactory results. A taxpayer who drills wells for others for money and who has and is acquiring no interest in the completed well, is plainly making no capital investment, and what he expends for labor and the like in doing his job is business expense, and the decisions permitting him to deduct it are right and according to the Statute and the Regulation. So those are correct which hold that one who drills a well, as the consideration for which he is to get an interest in the oil reserve and in the well, is plainly making a capital investment, just as though he were building a house or a bridge to an inaccessible mine. Everything necessarily expended to make the well or the house or the bridge is investment, not expense. It does not matter whether the driller gets an assignment or a lease in return for making the well, or whether he gets his formal title before or after he drills; in every such case he is making a capital investment.[1] The Hardesty case, 5 Cir., 127 F.2d 843, in both its branches, seems to me rightly decided. But it is in the teeth of the Regulation. As matters stand, if a lessee drills a well because he must drill in order to prevent loss of his lease by condition subsequent, or by breach of warranty to develop, he is allowed the expense option under the Regulation. If he drills because he agreed to in acquiring his lease, as in the Hardesty case, he has no option. There is really no ground for this distinction. In both instances he has to drill to have his lease. In both, having drilled, he owns the well. He has made the same capital investment. In the case before us, we deny Hunt deduction of drilling expense in all cases but two, because he was under contractual obligation to drill and acquired an interest in the land and owned an interest in the wells after drilling them. He was plainly making capital investments. As to the two exceptions, he already owned a half of the land drilled and was acquiring an interest in the other half by the drilling. There is really no sense in saying that what he was spending on the well was half a capital investment and half expense. No one would think so, except for the option which the Regulation is supposed to give to owners. The option ought to be given broadly to all who risk their money in drilling oil wells if, as is argued, the Regulation is intended to encourage drilling, and is valid. Otherwise, an expense deduction ought to be allowed only where the facts show that the expenditures were really expenses and not a capital investment; with no right of arbitary option given to any taxpayer. I concur in that part of the judgment which permits an expense deduction, only because the Regulation gives it and has not been attacked, and because the decided cases require it.

---

[1] In case the well is a failure, there is, of course, a loss of its cost less salvage. The deduction of the net loss as an expense, as the Regulation provides, is right in effect though not accurate. It is as though a house was destroyed in its building.