**POOL et al.**

v.

**UNITED STATES.**

No. 214.

United States Court of Claims.
March 2, 1954.

⬥659

Arthur Glover, Amarillo, Tex., for plaintiffs. Russell & Glover, Amarillo, Tex., were on the brief.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and Lee A. Jackson, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

The plaintiffs are the executors of the estate of Joseph T. Sneed, Jr., who died in October, 1940. At the time of his death he owned a one-half interest in a tract of 9,900.66 acres in Dallam County, Texas. The land was subject, at that time, to a mineral lease to the Pure Oil Company. The lease was dated March 23, 1940, was for a primary term of 10 years, and called for a delay rental of $1 per acre per year. It reserved to the lessors a one-eighth royalty interest, which gave Joseph T. Sneed, Jr., a one-sixteenth royalty interest, since he was the owner of a one-half interest in the land.

The Government's taxing authorities put a valuation of $5.00 per acre, upon the lessor's mineral interest in the land, in assessing Mr. Sneed's property for estate tax purposes. Mr. Sneed's one-half was thus assessed at $2.50 per acre, or a total of $24,751.65. The basis for the valuation of the mineral interest was that the land was under lease to the Pure Oil Company and that a delay rental of $1 per acre per year was provided for in the lease. No mineral interest value whatever was attributed to some 7,000 acres of other land, apparently contiguous to the land here involved, in which other land the deceased also owned a one-half interest, the apparent reason for the distinction being that there was no mineral lease on the other land.

In 1944 the Pure Oil Company drilled in the extreme northeast corner of the land, which was rectangular in shape. At a depth of 6,779 feet, granite was encountered and the well was plugged. The Marland Oil Company had, in 1928, under a former lease, drilled a test well near the southern boundary of the tract, about midway between the east and west boundaries. This well was drilled to a depth of 3,500 feet and abandoned. On March 5, 1945, the Pure Oil Com-

pany by a written communication to the plaintiffs surrendered and canceled its mineral lease on the land.

The Commissioner of Internal Revenue determined that the estate of Joseph T. Sneed, Jr., had a net income in 1945 of $76,997.76, of which $61,261.81 was taxable to the estate, the balance being taxable to certain distributees. The estate paid an income tax of $36,672.03 for the year. Later, but within the time stipulated in the law, the executors of the estate filed a claim for the refund of $18,591.54 of the tax that they had paid on behalf of the estate. The basis of the claim was that the estate was entitled to a deduction of $24,751.65 from its 1945 income, because in that year the estate's mineral interest, which the Government had assessed for estate tax purposes at that figure, had been determined to be worthless and had been abandoned. The claim for refund was disallowed, and the plaintiffs brought this suit.

Section 23(e) of the Internal Revenue Code, 26 U.S.C.A. § 23(e), provides that in computing the net income of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise may be deducted (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business.

Treasury Regulations 111, promulgated under the Internal Revenue Code, provide:

"Sec. 29.23. (e)–1. *Losses by Individuals.* * * *

"(b) In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. See section 113(b).
* * *

"* * * * * *

"Sec. 29.162–1 [as amended by T. D. 5458, 1945 Cum.Bull. 45]. *Income of Estates and Trusts.* (a) In ascertaining the tax liability of the estate of a deceased person or of a trust, there are deductible from the gross income, subject to exceptions, the same deductions which are allowed to individual taxpayers.
* * *

"* * * * * * "

Our question is whether the estate suffered a "closed and completed" loss of its mineral interest in the land during the year 1945. The Government urges that the mineral interest was still owned by the estate after the surrender by the Pure Oil Company of its lease, and indeed, more fully owned than before the surrender, since, after the surrender, the estate owned one-half the minerals in the land whereas before the surrender it owned only one-sixteenth.

The chance of finding oil or gas on the land was the only thing that gave value to the so-called mineral interest in the land. When that chance was reduced to zero value, the mineral interest was "lost," within the meaning of Section 23(e) and of the Regulations. The chance was reduced to zero value by the action of the Pure Oil Company, which had paid some $50,000 in delay rentals for the privilege of taking oil from the land if it could find any there, in concluding that there was no prospect of finding any, and canceling its lease. The value, or absence of value, of the chance of striking oil on land is determined, for the landowner, by the judgment of the oil companies. It is economically impossible for the land owner to make his own exploration, and his judgment, as against that of the companies which are in the business of exploring for oil, would be unreliable. Hence, when those who are in the oil business have decided that there is no reasonable prospect of finding oil on the

owner's land, his mineral interest has, in fact, disappeared. The Government's own expert valued the mineral interest in the non-leased adjoining land at zero in 1940, simply because that was the value which the oil companies had placed upon it, as shown by their not having leased it. We follow the admonition of the Regulations, "Substance and not mere form will govern in determining deductible losses."

The Government suggests that the two test wells, the 1928 one on the southern border of the tract and the 1944 one in the northeast corner, were not adequate tests on which to base a decision that there is no oil in the tract. But we do not decide that there was no oil in the tract. All that we decide is that those whose judgment determines whether a mineral interest in the tract is of value decided that it was of no value. That decision made the mineral interest worthless so far as the owner was concerned. See United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

The Government urges that the mineral interest was merely a part of the total ownership of the land and that, therefore, so long as the land itself had value, there was no "closed and completed" loss, but merely a diminution in the total value of the land. This is a troublesome question. It is doubtless true that if the value of one's land was increased by the fact that oil companies had leased the surrounding land, but he had not leased his land, because, for example, he demanded a more favorable royalty than prospective lessees were willing to give him, and then when the surrounding land was tested it was found that there was no oil in the neighborhood, and his land dropped back to its former value, he could not claim a deductible loss. But when, as in the case before us, the mineral interest in the land had been transferred by lease, reserving a royalty to the owner, we think that the custom in oil-producing areas is to regard the mineral interest as a separate thing from the rest of the ownership of the land. The various states in which oil is found differ in their analyses of the legal interests which arise out of oil leases. Texas has, perhaps, gone as far as any state in recognizing mineral interests as susceptible of ownership and transfer separate from other interests in the land. See Lemar v. Garner, 121 Tex. 502, 50 S.W. 2d 769. The fact that, in assessing the assets of the estate of Mr. Sneed for estate tax purposes, the Government separately valued and listed the mineral interest in the land proves something as to how the interest was regarded.

The Treasury Department issued General Counsel's Memorandum 3890 (1953 Prentice-Hall Tax Service PP 13494) which seems to say directly that a lessor's royalty interest in an oil lease is a separate item of property which becomes worthless when it is found that there is no oil in the property, and is then a proper subject of a deductible loss.

The plaintiffs are entitled to recover $18,591.54, with interest as provided by law.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.