**Robert S. DAVIS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Robert S. DAVIS, Respondent.**

**Nos. 11727, 11728.**

United States Court of Appeals
Seventh Circuit.

March 1, 1957.

Walter E. Barton, Washington, D. C., for Davis.

Charles K. Rice, Asst. Atty. Gen., Davis W. Morton, Jr., Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Lee A. Jackson, Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., for C. I. R.

Before LINDLEY and SCHNACKENBERG, Circuit Judges, and WHAM, District Judge.

LINDLEY, Circuit Judge.

In 11727 the taxpayer seeks to set aside a judgment of the Tax Court denying him the right to take as a deduction his admitted loss of $32,000 for the year 1945 on an investment in a part interest in an oil and gas lease. In 11728 the Commissioner seeks to avoid a judgment of the same court allowing the loss as a deduction' for the year 1944. The second appeal is taken, as the Government frankly avows, to protect its rights if this court disturbs the decision that the loss was sustained in the year 1944. Consequently, the only question presented is whether the Tax Court properly held the deduction in question attributable to the year 1944 instead of the year 1945.

On January 1, 1940 an oil and gas lease was executed by the United States as lessor to certain lessees, covering four sections of land in Lee County, New Mexico, "for a period of five years and as long thereafter as oil and gas is produced in paying quantities." On October 17, 1944, the lessees assigned that part of the lease, to Cherry and Kidd, covering Sections 21 and 28 in Town 19 S., R. 33 E., N.M.P.M., Lee County. On July 6, 1944, petitioner advanced to Cherry and Kidd, $32,000 as payment for an undivided one-half interest in their sub-lease covering Sections 21 and 28, and they executed and delivered to him a written assignment. This instrument was not filed with the Secretary of the Interior.

In the fall of 1944 Cherry and Kidd drilled a well on Section 21, but discontinued work thereon, on December 19, 1944, at a depth of 3600 feet. This well was plugged and abandoned on January 6, 1945 and this action was approved by the Secretary of the Interior on November 7, 1945. No other well was drilled on either Section 21 or Section 28. Promptly after ceasing drilling the well in Section 21, the original lessees filed with the Government, a preference right application for a new lease on Sections 29 and 30, and this was allowed by the Department of Interior later effective as of December 31, 1944. On the same day Cherry and Kidd filed a like application for a new lease covering Sections 21 and 28, and, on August 29, 1946, received it effective as of December 31, 1944. The record does not disclose that petitioner at any time obtained or had any interest in either of the new leases.

These facts and others were stipulated and parol evidence was submitted. The

stipulation included an agreement as to the year 1944 that: "The correct net income of the petitioner for 1944 is $32,-387.99, unless the Court should hold that petitioner sustained a loss of $32,000.00 during said year 1944 upon the termination of said lease referred to in paragraph 4(a), supra, in which event the correct net income of petitioner for said year 1944 is $387.99" and, as to the year 1945, that: "The correct net income for 1945 is $103,063.37, unless the Court should hold that petitioner sustained a loss of $32,000.00 during said year 1945 upon the termination of said lease referred to in paragraph 4(a), supra, in which event the correct net income of petitioner for said year 1945 is $71,063.37". The trial court, believing that that part of the stipulation which refers to the termination of the lease as the decisive event was a stipulation of law, held that the taxpayer had not proved that the loss occurred in 1945 but that, in fact, it had been sustained in 1944.

■■■ Section 23 of the Internal Revenue Act of 1939, 26 U.S.C.A. § 23, permits deduction, under subparagraph (e) of individual losses "sustained during the taxable year", if the loss was "incurred in any transaction entered into for profit." Regulation 118, Sec. 39.23 (e)–1(b), provides that a loss, to be deductible, "must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed." As the Supreme Court, in Boehm v. Commissioner, 326 U.S. 287, at pages 292, 293, 66 S.Ct. 120, at pages 123, 124, 90 L.Ed. 78, said: "Section 23 (e) itself speaks of losses 'sustained during the taxable year.' The regulations in turn refer to losses 'actually sustained during the taxable period,' as fixed by 'identifiable events.' Such unmistakable phraseology compels the conclusion that a loss, to be deductible under § 23(e), must have been sustained in fact during the taxable year. * * * The standard for determining the year for deduction of a loss is thus a flexible,

practical one, varying according to the circumstances of each case." And, as the court said, in Nelson v. United States, 8 Cir., 131 F.2d 301, at page 302, the question is one of fact controlled by evidence in the particular case. So, here, the parties properly stipulated that the court's decision as to liability should be based upon a determination of the year in which the loss occurred. Obviously, the further stipulation that this meant termination of the lease was not controlling, and the Tax Court rightfully proceeded to decide the question of the proper date for itself.

■■ However, we find no justification for the conclusion of the Tax Court that the evidence does not reflect a loss sustained in the year 1945. It is undisputed that the lease did not expire until January 1, 1945; that it covered two sections of land; that only one well had been driven, on one of the two sections; that complete exploration of the possibilities for production of oil and gas on 1280 acres had not been explored or ascertained; that the lessees had a right to apply to the Government for new leases before the expiration date; and, that, until the lease expired, they had the right to proceed to endeavor to discover oil and gas. As long as the lease was in effect, there was a possibility that other wells on the section in which the one well had been driven and on the other sections on which no well had been drilled might result in finding oil and gas in productive quantities. Consequently, it cannot be said that the leases were worthless. The abandonment of one well on a total of 1280 acres is not proof of the worthlessness of an oil lease upon the entire acreage. That the parties continued to believe in such possibilities is evident from their applications for and allowance of new leases. Consequently, this lease, not made worthless by the drilling of one well, was of some value at all times until it expired, and the Tax Court, we think, was not justified in saying that stopping work on the one well was an abandonment of the entire leasehold, and proof of the lack of value

of the entire lease at that time. The identifiable event, in our opinion, irrespective of the stipulation of the parties to that effect, but as a matter of law, upon the undisputed facts, was the time of the closed transaction, that is, the year 1945. Until that time plaintiff retained an interest in the lease, the possibilities of which had not been exhausted. Obviously, however, when his lease expired and no attempt was made to renew it, he lost everything he had invested in the lease; and that loss occurred upon the effective termination of the lease in 1945.

Similar to the question here was the one before the court in Helvering v. Canisteo Mining Co., 8 Cir., 76 F.2d 378, 379. There the lease was to become invalid upon giving six months' notice. The Government contended that the loss occurred when the notice was given, but the court held that the loss was sustained when the lease expired by virtue of the notice saying: "Until the expiration of this prescribed period the lessee is bound by the terms of the lease and all its obligations thereunder." Mertens, in his Law of Federal Income Taxation, Volume 5, page 54 (1956 Edition) concludes that any loss of investment in an oil lease is sustained at the expiration of the lease, unless there is a definite abandonment prior to the termination thereof. Otherwise, there is no loss, until the lease is cancelled or terminated according to its provisions. We approve of this reasoning.

We think there can be no doubt that the definable date for fixing the time of the loss was January 1, 1945. In making such computations the first day of the period is excluded. Consequently, the lease, having been made January 1, 1940, did not expire until the end of January 1, 1945. This is in accord with the doctrine announced by Mr. Justice Holmes in Burnet v. Willingham Loan & Trust Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448. Similar are the announcements of other courts. See Eastern Oil Co. v. Coulehan, 65 W.Va. 531, at page 539, 64 S.E. 836 at page 839, as well as the text writers.

We conclude therefore, that the only possible inference to be drawn from the facts submitted to the Tax Court is that the identifiable date fixing the time of accruement of the loss was January 1, 1945, and that the deduction, accordingly, should be attributed to the year 1945 rather than to 1944. Each of the judgments of the Tax Court is reversed. Each of the causes is remanded for further proceedings in accord with the announcements herein contained.