**18**

Joel S. PRICE and Virginia K. Price,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

PRICE TRUST NO. 1—Robert by and through Joel S. Price and Virginia K. Price, Trustees, Plaintiff,

v.

UNITED STATES of America,
Defendant.

PRICE TRUST NO. 2—Montine by and through Joel S. Price and Virginia K. Price, Trustees, Plaintiff,

v.

UNITED STATES of America,
Defendant.

PRICE TRUST NO. 3—Kelsey by and through Joel S. Price and Virginia K. Price, Trustees, Plaintiff,

v.

UNITED STATES of America,
Defendant.

PRICE TRUST NO. 4—William by and through Joel S. Price and Virginia K. Price, Trustees, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 65–400 to 65–404.

United States District Court
W. D. Oklahoma.

Oct. 27, 1966.

Lytle, Soule & Emery, Oklahoma City, Okl., for plaintiffs.

John O. Jones, Justice Dept., Ft. Worth, Tex., John W. Raley, Jr., Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAUGHERTY, District Judge.

These are actions by the various Plaintiffs in the five consolidated cases to recover a refund of income taxes from the Defendant. After trial before the Court, the following findings of fact and conclusions of law are entered for the consolidated cases.

### FINDINGS OF FACT

1. The Plaintiffs (except as trustees) owned a ranch in Woodward County, Oklahoma consisting of 750 acres, more or less. The minerals were intact. In December, 1956, a discovery gas and distillate well for Woodward County was brought in approximately eight miles to the north. In January or February, 1957, the Plaintiffs were approached by the Lone Star Producing Company (Lone Star) for an oil and gas lease on the above ranch with assurance that a well would be drilled on the ranch without delay to a depth of around 8,000 feet. The terms for the oil and gas lease were acceptable to the Plaintiffs but they did not give assent thereto as they desired to acquire nearby minerals in view of the impending well.

2. In March, 1957, the Plaintiffs were successful in acquiring three nearby tracts of land. They were all subject to existing oil and gas leases and not all of the minerals under the three tracts were obtained. Deeds were received, one for each tract, and all conveyances were in fee simple to the Plaintiffs and in-cluded surface and minerals except as to those minerals not obtainable and all were subject to the existing oil and gas leases. In paying for the three tracts the Plaintiffs on their checks allocated $15.00 per acre of the amount paid for the surface and the balance, ranging from $30.00 to $70.00 per acre, was al-located to the minerals acquired. Plain-tiffs offered evidence that they were unable to purchase the minerals sepa-rately as to these three tracts and had to purchase the surface to get the minerals.

3. Thereafter, an oil and gas lease was granted by Plaintiffs to Lone Star on the 750 acre ranch and the well was started immediately. On September 30, 1957, the same was dry and abandoned at 8115 feet.

4. The Plaintiffs utilized the three newly-acquired tracts in the operation of their ranch upon purchase and have con-tinued to do so. However, since the newly-acquired tracts were across a River (North Fork of the Canadian River) from the original ranch, it is not an easy task as it is a 17-mile trip by truck over the nearest bridge to reach one side from the other. The Plaintiffs have not transferred or abandoned any of the three tracts since their acquisi-tion.

5. In the payment of income taxes for the calendar year 1957, the Plain-tiffs deducted the cost of the minerals under the three tracts in the amounts they had allocated to said minerals on their checks in paying for the three tracts of land. This was done on the basis that the Lone Star dry hole on the 750-acre ranch condemned the minerals purchased under the three tracts as being worthless.

6. The testimony of the Plaintiffs placed a value on the minerals acquired under the three newly-acquired tracts at from $50.00 to $100.00 per acre at the time the tracts were purchased by the Plaintiffs. The testimony of the De-fendant placed this value at from $10.00 to $40.00 per acre on one tract and from $15.00 to $40.00 per acre on the other two tracts. One witness of Defendant

placed a value of $50.00 per acre on all tracts with knowledge that the Lone Star well was going to be drilled on the original ranch.

7. The testimony of the Plaintiffs placed the value of the minerals owned by them under the original ranch and the three newly-acquired tracts at from $2.00 to $5.00 per acre after the Lone Star well was declared to be dry and abandoned. The testimony of the Defendant placed the value of these minerals at $12.50 per acre.

## CONCLUSIONS OF LAW

1. The venue of this suit is in this District Court as provided by Title 28 United States Code § 1402(a) and original jurisdiction is present here as provided by Title 28 United States Code § 1346(a) (1).

2. Under Section 165(a) of the Internal Revenue Code of 1954, there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Title 26 United States Code § 165 (a). The basis for determining the amount of a deduction for any loss shall be the adjusted basis for determining the loss from the sale or other disposition of property. Title 26 United States Code § 165(a); Title 26 United States Code §§ 1011 and 1012.

3. Treasury Regulations on Income Tax (1954 Code) pertaining to Title 26 United States Code § 165, provide as follows:

"Sec. 1.165–1 *Losses.*—

(a) *Allowance of deduction.* Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder.

(b) *Nature of loss allowable.* To be allowed as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in section 165(h) and sec. 1.165–11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

\*    \*    \*    \*    \*    \*

(d) *Year of deduction.* (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. For provisions relating to situations where a loss attributable to a disaster will be treated as sustained in the taxable year immediately preceding the taxable year in which the disaster actually occurred, see section 165(h) and sec. 1.165–11."

\*    \*    \*    \*    \*

4. In this suit for refund of federal taxes, the Plaintiffs have the burden of establishing the essential facts from which the determination of their tax liability can be made. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Roybark v. United States (9th Cir. 1954), 218 F.2d 164; 5 Mertens, Chap. 28, Pg. 7, Sec. 28.03.

5. Under the above Treasury Regulations requiring that losses be evidenced by closed and completed transactions, in the case of real estate, the closed and completed transaction must either be a transference of the real estate from the owner or his abandonment thereof. Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue (5th Cir. 1947), 161 F.2d 842; 5 Mertens, Chap. 28, Pg. 38, Sec. 28.15; United States v. Sentinel Oil Co. (9th Cir. 1940), 109 F.2d 854.

6. The Plaintiffs' fee interest in the three newly-acquired tracts involved herein must be considered as a unit and not as a bundle of many interests. This is not altered by the fact that the primary purpose of acquisition was for anticipated mineral development. Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue, supra.

7. Plaintiffs, as landowners in fee simple, cannot take a deduction for the loss of each use to which they may put the fee. To allow this would be to permit a deduction for the mere shrinkage in value of the asset prior to a closed and completed transaction. Louisiana Land & Development Co. v. Commissioner of Internal Revenue, supra; 5 Mertens, Chap. 28, Pg. 37, Sec. 28.14.

8. Had the Plaintiffs acquired only one interest in the tracts, such as the minerals, a royalty interest or an oil and gas lease, and such had become worthless by a closed and completed transaction, fixed by an identifiable event, a loss deduction would be allowable. Treasury Department, Internal Revenue Service Form 927 (Proof of Worthlessness of Mineral Rights) is available and used for this type of interest and loss. Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue, supra; Davis v. Commissioner of Internal Revenue (7th Cir. 1957), 241 F.2d 701; 5 Mertens, Chap. 28, Pg. 65, Sec. 28.20; Vol. 4, Federal Taxes, Prentice-Hall, Paragraph 13494.

9. By reason of the foregoing, the deductions claimed by the Plaintiffs are not allowable inasmuch as the minerals were not acquired separately but as a part of the fee simple title and there has been no disposition or abandonment of the fee simple title by the Plaintiffs nor is the same worthless. Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue, supra; Coalinga-Mohawk Oil Co. v. Commissioner of Internal Revenue, 9th Cir., (1933), 64 F.2d 262, cert. denied 290 U.S. 637, 64 S.Ct. 54, 78 L.Ed. 553; Appeal of Fred C. Champlin, 1 B.T.A. 1255 (1925).

10. The United States Court of Claims case of Pool et al. v. United States (1954), 119 F.Supp. 202, 127 Ct. Cl. 549, may be argued as being contrary to the legal conclusions reached by the Court herein and the authorities cited in support thereof. A distinguishing feature is that Government taxing authorities separately fixed the valuation of the minerals from the valuation of the fee less the minerals for estate tax purposes. A loss was allowed on proof that the minerals were thereafter condemned by drilling operations. No such separate valuation by the Government has been effected herein. Moreover, the Court is of the opinion that the decision is erroneous by giving consideration to the separate valuations made by the Government for estate tax purposes, in treating non-separated minerals the same as separated minerals for tax loss purposes and in its conclusion that General Counsel Memorandum 3890 applies to non-separated mineral rights. Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue, supra; Vol. 4, Federal Taxes, Prentice-Hall, Paragraph 13494.

11. In view of the above conclusions of law the Court does not reach or need to determine the actual value of said minerals when purchased by Plaintiffs in 1957, or if said minerals became worthless in 1957 by reason of the Lone Star dry hole.

Pursuant to the findings of fact and conclusions of law made herein, the plaintiffs are not entitled to the recoveries they seek herein from the Defendant. Counsel for Defendant will prepare appropriate judgments. Rule 58, F.R.Civ.P., 28 U.S.C.A.