## UNITED STATES v. SPALDING.

### No. 8648.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1938.

James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Lester L. Gibson, Sp. Assts. to Atty. Genl., and Benjamin Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., Alva C. Baird, Sp. Asst. to U. S. Atty., and Eugene Harpole, Sp. Atty., U. S. Treasury Department, all of Los Angeles, Cal.

Joseph D. Peeler, of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

For the year 1930, appellee, Silsby M. Spalding, paid an income tax of $132,-146.32. Thereafter, pursuant to § 3226 of the Revised Statutes, as amended by §

1103(a) of the Revenue Act of 1932, 26 U.S.C.A. §§ 1672–1673, he claimed a refund of the entire amount of said tax, alleging that he had, in fact, no taxable net income in 1930. The claimed refund was granted to the extent of $4,404.27 only.

Thereafter, pursuant to § 3226, supra, and § 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20), appellee brought suit against appellant, the United States,[1] for $40,608.57 of the unrefunded portion of the tax. The case was tried by the court without a jury, trial by jury having been expressly waived. The trial court filed a written opinion (D. C., 17 F.Supp. 966) and special findings of fact and thereupon entered judgment in appellee's favor for $40,034.82. Appellant seeks reversal.

The trial court's findings of fact are not challenged. The facts found are as follows:

On March 21, 1929, pursuant to § 4 of c. 303, Statutes of California, 1921, p. 405, as amended (Stats.1929, p. 12; Deering's General Laws, 1931, Act 6341, p. 3456), the State of California granted appellee a permit to prospect for oil and gas on certain State tidelands. On May 10, 1929, appellee assigned the permit to Pacific Western Oil Company and, on the same day, he and the Oil Company entered into an agreement the pertinent provisions of which were as follows:

"Rights of Way and Easements. [Appellee] hereby grants to the [Oil Company] the right, so long as the [Oil Company] shall not be in default under the terms of this agreement, to enter upon [certain littoral lands of appellee adjacent to the tidelands covered by the permit] for the purpose of constructing, maintaining and repairing such piers or other structures upon said [tidelands] as may be necessary for the purpose of drilling and prospecting for oil and gas on said [tidelands] and for the purpose of constructing upon said littoral lands such casinghead gasoline plants, pipe lines, tanks for storage, sumps, roads, telephone, telegraph and electric transmission wires and other buildings and equipment which may be necessary for the purpose of carrying out any and all of said operations contemplated by the [Oil Company] under said permit and [the lease which it intended to, and did subsequently, obtain from the State].

  *    *    *    *    *    *    *    *    *

"As a part of the consideration for said assignment of said permit by [appellee] and of the grants of rights of way and easements to the [Oil Company] * * * the [Oil Company] agrees to pay to [appellee] on or before the 20th day of each and every calendar month during the term of said permit and also during the term of said future lease, and any substitutions, renewals, extensions and amendments of either thereof, an amount of money, which * * * shall be equal to [29⅝%] of the value of all oil produced and saved from said [tidelands] during the preceding calendar month, plus [29⅝%] of the net profits derived from the manufacture of casinghead gasoline from the gas produced and saved from the said [tidelands] during the preceding calendar month * * * plus [29⅝%] of the value of all gas produced and saved from the said [tidelands] and sold or used by the [Oil Company] otherwise than in its operations during the preceding calendar month. Said monthly payments of said amounts shall continue until such time as [appellee] shall have received on account thereof the sum of $200,083.24 and thereafter and during the remainder of the term of said permit and also during the remainder of the term of said future lease, and any substitutions, renewals, extensions and amendments of either thereof, the [Oil Company] agrees to pay to [appellee] on or before the 20th day of each and every calendar month, an amount of money, which * * * shall be equal to [15⅝%] of the value of all oil produced and saved from said [tidelands] during the preceding calendar month, plus [15⅝%] of the net profits derived from the manufacture of casinghead gasoline from the gas produced and saved from the said [tidelands] during the preceding calendar month * * * plus [15⅝%] of the value of all gas produced and saved from the said [tidelands] and sold or used by the [Oil Company] otherwise than in its operations during the preceding calendar month. It is particularly understood and agreed that this paragraph shall not be construed as giving or reserving in or to [appellee] any interest or title or lien whatever in or to or against said oil or gas produced from said [tidelands] or in or to or against any of said net profits from said manufacture of casinghead gasoline and it is particularly understood and agreed that reference is had to said production of

---

[1] The Collector by whom the tax was collected being no longer in office.

said oil and gas and said net profits from said manufacture of said casinghead gasoline solely for the purpose of determining the amounts of said monthly payments herein specified to be made by the [Oil Company] to [appellee]. * * *."

Pursuant to the permit, assignment and agreement aforesaid, the Oil Company drilled wells, discovered oil and on September 10, 1929, obtained from the State a lease (No. 92) for the production of oil and gas from the tidelands covered by the permit.

On February 13, 1930, appellee executed and delivered two assignments, one to A. J. Salisbury, Jr., the other to William W. Lovett, Jr. In each assignment, reference was made to the Oil Company's agreement with appellee; its lease (No. 92) from the State; a lease (No. 93) held by appellee's wife, Caroline C. Spalding; and a drilling agreement between her and the Oil Company under which the Oil Company was producing oil and gas from the lands covered by her lease.[2] Each assignment contained the following provisions:

"Whereas, [appellee] desires to make a gift to [the named assignee] of part of the moneys payable to him by the [Oil Company] under the agreement of May 10th, 1929, and of the right to receive said moneys from the company, the amount of such gift to be measured by and based upon the percentage of the value of the production from said [Caroline C. Spalding's] State Oil Lease No. 93. * * *

* * * * * * * * *

"[Appellee] hereby gives, assigns, transfers and delivers to [the named assignee], his heirs, executors, administrators, successors and assigns that part of each payment[3] commencing with the payment which will become due February 20th, 1930, and including each payment coming due thereafter, to and including the payment coming due next after the termination of the drilling agreement [between Caroline C. Spalding and the Oil Company], which shall be measured by and equal to one per cent of the value of production[4] for the preceding month, to the end that the total of the portions of such payments hereby

assigned shall be equal to one per cent of the value of production between the 20th day of January, 1930 and the date when said drilling shall terminate, and likewise, the undersigned hereby gives, assigns, transfers and delivers to [the named assignee], his heirs, executors, administrators, successors and assigns the right to collect and receive that part of each payment which is hereby assigned.

* * * * * * * * *

"This assignment is intended to and shall operate for all purposes as an executed gift, of a present vested interest."

These assignments—although, in terms, assigning money payments only— were, as between the parties, equitable assignments, pro tanto, of appellee's beneficial interest in the agreement of May 10, 1929. Goldman v. Murray, 164 Cal. 419, 129 P. 462; Barlow v. Lande, 26 Cal.App. 424, 147 P. 231; H. D. Roosen Co. v. Pacific Radio Pub. Co., 123 Cal.App. 525, 11 P.2d 873. This is true notwithstanding the contingent character of the payments referred to. Smitton v. McCullough, 182 Cal. 530, 189 P. 686; Baumgarten v. California Pacific Title & Trust Co., 127 Cal.App. 649, 16 P.2d 332.

Also, on February 13, 1930, appellee, Salisbury, Lovett and the Oil Company entered into an agreement whereby the Oil Company accepted the assignments and agreed to make payments in accordance therewith. This constituted a novation, pro tanto, so that thereafter, to the extent indicated, the Oil Company's obligation under the agreement of May 10, 1929, was to Salisbury and Lovett, instead of appellee. Bank of Yolo v. Bank of Woodland, 3 Cal.App. 561, 86 P. 820; H. D. Roosen Co. v. Pacific Radio Pub. Co., supra; Sprague Canning Machinery Co. v. Western Ranching Corporation, 29 Cal. App. 374, 155 P. 1017.

In 1930, the Oil Company produced oil from the property covered by its lease (No. 92) and from that covered by Caroline C. Spalding's lease (No. 93) and, pursuant to the agreement of May 10, 1929, and the assignments and agreement of February 13, 1930, paid to appellee in 1930 amounts

---

[2] See Spalding v. United States, 9 Cir., 97 F.2d 697, decided this day.

[3] In each assignment, the term "payment" was defined as meaning one of the payments falling due to appellee under his agreement with the Oil Company.

[4] The term "value of production" was defined as meaning the gross sums received by Caroline C. Spalding under the drilling agreement between her and the Oil Company, less certain deductions.

aggregating $517,764.10 and to Salisbury and Lovett amounts aggregating $17,765.64.

■ In determining appellee's tax liability for 1930, the Commissioner of Internal Revenue included as part of appellee's gross income the $17,765.64 which the Oil Company paid to Salisbury and Lovett in that year. Appellee contended that this was not income to him and should not have been so included. The trial court upheld appellee's contention and, we think, properly so. Salisbury and Lovett were entitled to receive, and did receive, this money. It was not payable to or receivable by appellee, and was not so paid or received. It was not appellee's money and, consequently, was not income of appellee. Blair v. Commissioner, 300 U.S. 5, 11, 57 S.Ct. 330, 332, 81 L.Ed. 465.

Cases cited by appellant are readily distinguishable. In Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Wehe v. McLaughlin, 9 Cir., 30 F.2d 217; and Daugherty v. Commissioner, 9 Cir., 63 F.2d 77, the taxpayer had, in each case, made an agreement with his wife whereby his future earnings were to be received and owned by them jointly. In Ward v. Commissioner, 9 Cir., 58 F.2d 757, and in Bing v. Bowers, 2 Cir., 26 F.2d 1017,[5] the taxpayer had assigned future rentals, but had not assigned the lease or transferred the leased property, or any interest therein, to his assignee. In Leydig v. Commissioner, 10 Cir., 43 F.2d 494, the claimed assignment was of royalties under oil and gas leases to be executed in the future. These cases, obviously, are not in point.

■ There is one other question, namely, Was appellee entitled to an allowance for depletion of the oil wells on the property covered by Lease No. 92?

Appellee was never the owner or lessee of the leased property, never produced any oil or gas therefrom, could not in 1930 have produced any such oil or gas, and did not in that year have any capital investment in the oil or gas in place in the leased property. He nevertheless contends that he was entitled to an allowance for depletion under paragraph (3) of § 114(b) of the Revenue Act of 1928, 45 Stat. 821, 26 U.

S.C.A. § 114 note.[6] This contention, which the trial court upheld, must be rejected. On this question, Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. ——;[7] Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. ——,[8] and Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. ——,[9] are directly in point. In view of these decisions—all subsequent to the trial court's judgment—we must and do hold that appellee had in 1930 no economic interest, and, therefore, no depletable interest, in the oil or gas in place in the property covered by lease No. 92.

Judgment reversed and case remanded for further proceedings in conformity with this opinion.

---

[5] Affirming D.C., 22 F.2d 450.

[6] Quoted in Spalding v. United States, 9 Cir., 97 F.2d 697, decided this day.

[7] Affirming in part, reversing in part, Bankline Oil Co. v. Commissioner, 9 Cir., 90 F.2d 899.

[8] Reversing Commissioner v. O'Donnell, 9 Cir., 90 F.2d 907.

[9] Reversing Elbe Oil Land Development Co v. Commissioner, 9 Cir., 91 F.2d 127.