COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

SOUTHWEST EXPLORATION COMPANY, a corporation, Respondent.

No. 13875.

United States Court of Appeals, Ninth Circuit.

March 7, 1955.

H. Brian Holland, Asst. Atty. Gen., Hilbert P. Zarky, Ellis N. Slack, Cecilia H. Goetz, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Internal Revenue Service, Washington, D. C., for petitioner.

Melvin D. Wilson, Los Angeles, Cal., for respondent.

Pillsbury, Madison & Sutro, W. J. McFarland, Harry R. Horrow, Sigvald Nielson, San Francisco, Cal., amici curiae.

Before STEPHENS and CHAMBERS, Circuit Judges, and HARRISON, District Judge.

PER CURIAM.

In this appeal, the only question brought to us from the Tax Court is who is entitled to depletion for oil that is extracted from beneath the ocean. The Tax Court held that upland owners from whose lands the slant wells were drilled into the pool of oil, under the ocean, are not entitled to participate in the depletion for oil thus extracted. The Commissioner of Internal Revenue appeals asserting that the upland owners, comprising the Huntington Beach Co., Pacific Electric Ry. Co., Pacific Electric Land Co., The Bolsa Land Co., the Bolsa Chica Gun Club, and the Standard Oil Co., upon whose lands the wells were drilled and through whose property the rights of way and easements were granted for the drilling of such wells are entitled to a portion of the depletion for oil extracted under the permit granted by the State to the taxpayer.

We are in accord with the ruling of the Tax Court [18 T.C. 961] and adopt that part of the Tax Court's opinion reading as follows:

"The second question involves petitioner's right to a depletion deduction on the 24½ per cent of its net profits which it paid to certain upland owners. It was on and through the property of these owners that petitioner had located various 'whipstock' wells for the production of gas and oil from the submerged lands located adjacent thereto.

"As pointed out above, petitioner acquired the sole right to exploit the oil property in question by virtue of its 1938 agreement with the State of California. The terms of this agreement provided that any development of, or drilling into, the submerged lands covered thereby must be conducted from littoral or upland sites. This provision required as a condition precedent to

the agreement that the requisite easements be procured from the owners of the adjacent uplands and that certification as to such action then be made in the form of an endorsement by the upland owners attached to the agreement as finally executed. In consideration of the necessary easement and certification petitioner agreed to pay to the upland owners involved an amount equal to 24½ per cent of its net profits.

"Petitioner seeks to include the foregoing amount within its gross income subject to a deduction for depletion in accordance with sections 23(m)[2] and 114(b) (3),[3] Internal Revenue Code [26 U.S.C.A. §§ 23(m), 114(b) (3) ].

"In order to determine whether petitioner is entitled to include the above amount within its gross income and then be allowed the depletion claimed, we would briefly recall the purpose and intent of the statutory allowance. Because of their inherent nature, oil and gas reserves, together with other mineral deposits, have been recognized and designated as wasting assets. Anderson v. Helvering, 310 U.S. 404 [60 S.Ct. 952, 84 L.Ed. 1277]. By this designation it is meant that a portion of the capital assets is consumed in the production of income through exploitation thereof. Helvering v. Bankline Oil Company, 303 U.S. 362 [58 S.Ct.

616, 82 L.Ed. 897]. Hence, Congress has granted the deduction in question as an equitable means of allowing a tax free return of the capital so consumed in the process of production. Anderson v. Helvering, supra. It follows that the depletion deduction is allowable only to those who have a capital investment or economic interest in the oil or other mineral in place from which income is received by reason thereof. Kirby Petroleum Company v. Commissioner, 326 U.S. 599 [66 S.Ct. 409, 90 L.Ed. 343]; Burton-Sutton Oil Co., Inc., v. Commissioner, 328 U.S. 25 [66 S.Ct. 861, 90 L.Ed. 1062]; Helvering v. Bankline Oil Company, supra; United States v. Spalding [9 Cir.], 97 F. 2d 701. In determining whether a taxpayer has such an investment or interest no significance attaches to the particular legal form of the transaction creating the rights. Burton-Sutton Oil Co., Inc., v. Commissioner, supra; Palmer v. Bender, 287 U.S. 551 [53 S.Ct. 225, 77 L.Ed. 489]; Lynch v. Alsworth-Stephens Co., 267 U.S. 364 [45 S.Ct. 274, 69 L.Ed. 660]. It is enough that the taxpayer has acquired through any form of legal relationship the right to share in the oil produced. Palmer v. Bender, supra. And a right to share in the profits from the sale of the oil following extraction is analogous to a right to share in the mineral itself. Hel-

"2. Sec. 23. Deductions from Gross Income. "In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(m) Depletion.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. \* \* \*

"3. Sec. 114. Basis for Depreciation and Depletion.

\* \* \* \* \*

"(b) Basis for Depletion.—

\* \* \* \* \*

"(3) Percentage depletion for oil and gas wells.—In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. \* \* \* "

vering v. Twin Bell Oil Syndicate, 293 U.S. 312 [55 S.Ct. 174, 79 L.Ed. 383]; Anderson v. Helvering, supra; Kirby Petroleum Company v. Commissioner, supra; Burton-Sutton Oil Co., Inc., v. Commissioner, supra. However, the term 'economic interest' does not embrace a ' * * * mere economic advantage derived from production through a contractual relation to the owner by one who has no capital investment in the mineral deposit * * *.' Helvering v. Bankline Oil Company, supra. On the contrary, it appears clearly that an allowance for depletion is warranted only where, by agreement between the parties, the taxpayer has obtained a capital interest in the oil and gas in place, to the severance and sale of which one must look for the return of capital consumed in that process. The right to share in the net receipts disassociated from an economic interest therein does not entitle the holder thereof to an allowance for depletion. Kirby Petroleum Company v. Commissioner, supra; Burton-Sutton Oil Co., Inc., v. Commissioner, supra; Anderson v. Helvering, supra; Helvering v. O'Donnell, 303 U.S. 370 [58 S.Ct. 619, 82 L.Ed. 903].

"In the instant case, it cannot be gainsaid that petitioner possessed an economic interest in the oil involved. The dispute arises as to whether petitioner was the sole owner of such an interest during the taxable years. Petitioner contends that it acquired and has retained the entire economic interest conveyed under the Agreement for State Easement No. 392. Respondent, on the other hand, rejects petitioner's contention and argues on brief that the upland owners, by their endorsement of the Agreement for State Easement No. 392, became parties thereto; that such owners thereby acquired an economic interest in the oil and gas in place directly from the State; that the income received therefrom by the upland owners is includible in their gross income, rather than that of petitioner, subject to the depletion deduction here in dispute.

"We have no desire or purpose to enter into the dispute as to the claims to rights in the submerged coastal areas (see U. S. v. California, 332 U.S. 19 [67 S.Ct. 1658, 91 L.Ed. 1889] [1947] ) and what we say herein is not intended in any way to pass upon the competing interests asserted in that litigation or growing out of the cited decision.[4]

"Prior to 1938 the State allowed such oil property as is here involved to be developed and operated from piers, islands or barges. In that year the State Legislature passed the so-called State Lands Act of 1938 pursuant to the provisions of which such methods of drilling and development were prescribed. This Act called for each well thereafter drilled in the submerged lands to be drilled from filled lands or slant drilled from an upland or littoral drill site. All equipment, derricks, machinery, appliances, surface structures and operations were required to be located upon such site. Section 87(a), Chap. 5, Calif. Stats., Ex.Sess., 1938 [p. 33]. This statute was passed as a regulatory measure applying to the development and exploitation of the coastal oil deposits. Obviously, the Act was not meant to convey any eco-

"4. Since the decision in United States v. California, supra, extraction of oil from the California submerged coastal lands, pursuant to leases previously granted by the State, has been authorized by stipulations executed by the State and the United States. See Hearings before Senate Committee on Interior and Insular Affairs on S.155, 81st Cong., 1st Sess., pp. 279–282; Hearings on S.J.Res. 195, 81st Cong., 2d Sess., pp. 22–26; S.J.Res. 20, 82nd Cong., 1st Sess., pp. 13–17."

nomic interests therein to anyone. Nor do we believe that it so did. Consequently, in so far as the 835 acres here involved are concerned, any present economic interests therein were acquired by virtue of, and simultaneously with, the Agreement for State Easement No. 392 or through some transaction subsequent thereto.

"The State and petitioner were the only parties to the body of this agreement. The granting clause therein granted to the petitioner the sole and ' * * * exclusive right to drain, take, receive, extract, remove, and produce from the * * * lands oil, gas, and other hydrocarbon substances * * *.' This right is not made subject to any pre-existing rights and there is no provision therein for income derived from oil production to be shared with third parties. Within its four corners, then, it would appear that such economic interests as were passed therein, were acquired by petitioner alone. Nor do we feel that further interests were obtained by other parties outside thereof because of the endorsement attached thereto but not included therein by any reference. There also appears to have been no such acquisition by third parties through any action on the part of the petitioner. There are in evidence three instruments whereby petitioner acquired the requisite upland easements. In return for such easements the owners thereof were granted the right to 24½ per cent of the net profits derived from petitioner's operations. But we do not feel that such parties thereby acquired a capital interest in the oil in place. One such agreement specifically provides that it shall not be so construed as to be a transfer of ' * * * any right, title or interest in [the] * * * State lands or in or under [the] * * *

State Easement, * * *'; and that it was the express intention of the parties thereto not to create a partnership relationship. Further, these parties were never owners nor lessees of the leased property. They did not, and could not, during the taxable years, have produced oil therefrom. Nor did they at any time during the period have any capital investment in the oil or gas in place. Cf. United States v. Spalding, supra. It would seem that the above-mentioned agreements could be terminated or modified at any time petitioner's agreement with the State of California was so terminated or modified. Under these circumstances it would appear that the upland drill sites and the agreements granting them to petitioner could be abandoned and terminated by petitioner at any time the State of California might see fit to change its policy toward drilling in the submerged coastal lands.

"In summation, then, it is our view that petitioner was the sole recipient under the Agreement for State Easement No. 392 of an economic interest in the oil property involved; that at no time thereafter was any economic interest therein acquired by third parties; that the amounts equal to 24½ per cent of petitioner's net profits were not paid as royalties or rents based upon an economic interest therein; and that, therefore, these amounts are includible in petitioner's gross income subject to the statutory allowance for depletion. Accordingly, we so hold. Respondent's claim for increased deficiencies, affirmatively set out in his amended answer, will be considered in the recomputation under Rule 50 [26 U.S. C.A. § 1111]."

Judgment of the Tax Court from which the appeal was taken is affirmed.