P. G. LAKE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48684. Filed September 20, 1955.

*Harry C. Weeks, Esq.*, for the petitioner.
*Paul M. Newton, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax of $9,060.79 for 1949, $47,459.09 for 1950, and $12,026.24 for 1951 and a deficiency in excess profits tax for 1950 of $65,044.07. Two issues are presented for decision. One is whether the petitioner realized a long-term capital gain from the sale in 1950 of a portion of an interest in two oil and gas leases. The facts relating to this issue have been fully stipulated and the stipulation on this and the other issue is adopted, together with all exhibits, as findings of fact in this case.

The petitioner is a Delaware corporation which filed its returns for the taxable years with the collector of internal revenue for the second district of Texas. It was engaged in developing oil and gas properties and producing oil and gas.

The petitioner was indebted to P. G. Lake in the amount of $600,000 on December 29, 1950, and on that date, in consideration of the cancellation of that indebtedness, sold and transferred to him 25 per cent of seven-eighths of all oil and gas upon two leases, entitling him to receive that portion of all production from the leases beginning at 7 a. m., January 1, 1951, until he had received $600,000 net to him, plus an amount equal to 3 per cent per annum payable monthly on the unpaid balance of the $600,000. The petitioner had owned the leases for several years prior to December 29, 1950, and had always held them for productive use in its business and not for sale. The petitioner reported the entire consideration of $600,000 as long-term capital gain on its return for 1950, but the Commissioner, in determining the deficiency, held that the $600,000, less the cost of documentary stamps affixed to the conveyance, was ordinary income subject to the allowance for depletion.

It is held that the petitioner correctly reported its gain from this transaction upon authority of the following cases which the Commissioner concedes are adverse to his contention: *Lester A. Nordan*, 22 T. C. 1132, in which the appeal of the Commissioner to the Court of Appeals for the Fifth Circuit was dismissed on June 8, 1955; *John David Hawn*, 23 T. C. 516, in which the Commissioner's appeal is now pending in the Court of Appeals for the Fifth Circuit; and *Caldwell v. Campbell*, 218 F. 2d 567. See also *Wm. Fleming*, 24 T. C. 818.

The other question for decision is whether amounts paid by the petitioner to another oil company for "transferred allowables" and as "shut-in royalty" to royalty owners under a lease owned by the petitioner, as the result of which the petitioner was allowed by the Railroad Commission of Texas to produce additional amounts of oil

from other portions of its properties, are to be subtracted as royalties paid with respect to the leases from which the oil was produced in determining the gross income from those properties for the purpose of the depletion allowance under section 114 (b) (3).

The Railroad Commission of Texas, hereafter called the Commission, at all times material hereto, had and exercised authority over oil and gas drilling and producing within the State, including the field known as the East Texas Oil Field in which all the properties involved herein were located. The Commission fixed the amount of oil which could be produced from wells and leases, and the amount so fixed is referred to as "allowable." Excessive salt water was produced along with oil in some instances, and the Commission permitted those operators whose properties were producing excessive amounts of salt water to shut in the wells, that is, to discontinue their operation and to produce from other wells or properties substantially the same amount of oil which they would have been allowed to produce from the shut-in wells. That is, they were allowed to transfer their allowable from a shut-in well to a producing well so that there could be produced from the latter not only its own allowable but the additional allowable transferred. The Commission permitted the transfer of the allowables from one operator to another or from one property to another where both were operated by the same person. An operator desiring to transfer an allowable from one of his leases which was shut in usually agreed with the royalty owners of that lease to continue in force the lease on the shut-in property by paying them amounts called substitute royalties based upon the amount of the allowable transferred.

DeMontrond Oil Corporation, a corporation related in no way to the petitioner, entitled in 1949 to transfer allowables on its lease of 25 acres of land known as the Pinkston lease, transferred that allowable to the petitioner in 1949 for a consideration of so much per barrel for each barrel of transferred allowable produced by the petitioner. The petitioner then obtained permission from the Commission to produce this allowable from its Owens lease in addition to the production which it was otherwise allowed on that lease. It produced the additional oil from the Owens lease during the taxable years and made payments to DeMontrond, the total amounts of which were as follows:

| | |
|---|---|
| 1949 | $12, 853. 41 |
| 1950 | 47, 012. 18 |
| 1951 | 20, 572. 75 |

The agreement transferring the allowable from DeMontrond to the petitioner did not mention any lease or property of the petitioner from which the allowable was to be produced and in no way referred to the

Owens lease or limited the petitioner's use of the allowable. It provided: "All of the oil produced by assignee under this agreement shall be the property of assignee." The Owens lease and the Pinkston lease were about 33 miles apart.

The petitioner owned a Lee lease and a Reid lease. It obtained permission to shut in the Lee lease because of the production of excessive amounts of salt water and to produce additional amounts of oil from the Reid lease, representing the transferred allowable from the Lee lease. The petitioner agreed to pay the royalty owners of the Lee lease substitute royalties on account of the transferred allowable. The agreement for the payment of the substitute royalties did not mention the Reid lease or limit the petitioner's use of the transferred royalty to that lease or to any other. It provided that the substitute royalty was to be paid monthly after the transferred allowable was produced. It was to be paid by the check of the petitioner to the parties entitled thereto. The petitioner paid substitute royalties as follows pursuant to the agreement:

| | |
|---|---:|
| 1949 | $7,687.93 |
| 1950 | 5,012.18 |
| 1951 | 3,713.15 |

The Reid lease and the Lee lease were about 3 miles apart.

The Commissioner, in determining the deficiencies, treated the amounts paid to DeMontrond and the amounts paid as substitute royalties to the royalty owners under the Lee lease as payments in the nature of royalties due and payable with respect to the Owens and Reid leases, deductible from gross receipts of those leases in computing the percentage depletion deductions allowable on those leases.

The following facts are found from the testimony of the only witness called:

The transferred allowables had no effect upon the royalty owners under the Owens lease or the Reid lease except to increase the production and thereby increase their royalties. The petitioner paid DeMontrond by its own check. It had no dealings with the royalty owners of the Pinkston lease. The petitioner did not have to produce the transferred allowables from the Owens lease and the Reid lease but could have used the transferred allowables to increase production on other of its leases or made other use of the transferred allowables. No part of the production from the Owens lease was run to the credit of DeMontrond, and no part of the production from the Reid lease was run to the credit of the Lee royalty owners. The petitioner had to make full payment to DeMontrond and the Lee royalty owners, based on the transferred allowables, even though the actual production for any period was short of that which was permitted with the benefit of the transferred allowables.

Section 114 (b) (3) relating to the basis for percentage depletion for oil wells provides that the allowance for this depletion under section 23 (m) "shall be 27½ per centum of the gross income from the prop-

erty during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." The Commissioner, in determining the deficiency, has excluded from the gross income of the petitioner from the Owens and Reid leases the payments which the petitioner made to DeMontrond and the Lee royalty owners on account of the transferred allowables on the theory that they were rents or royalties paid or incurred by the taxpayer in respect of the Owens and Reid properties.

The Commissioner states that the 27½ per cent of gross income from the property must be divided among all those who have an economic interest in the property and his argument in support of his determination is that DeMontrond, as the owner of the Pinkston lease, and the royalty owners of the Lee lease acquired economic interests in the Owens and Reid leases as a result of the exercise by the State of Texas of its police powers to conserve the oil field in which all of the leases were located, under which exercise of police powers DeMontrond and the Lee lease royalty owners transferred their allowables to the petitioner so that it could produce oil from the Owens and Reid leases. His conclusion apparently is that since the two transferors had an economic interest in the two producing properties the payments to the transferors were payments of rent or royalties with respect to the producing properties. He cites no case in point or which is closely analogous.

DeMontrond and the Lee royalty owners had no "capital investments" in the Owens or Reid leases. They had no control over those leases or the production therefrom. The Commissioner cites and relies on cases holding that a person has an economic interest and is entitled to share in the percentage depletion allowance if he has a "right to share in the oil produced," in "the proceeds from its sale," in "net income from production," or to share in "the oil in place." Those cases are not in point since neither DeMontrond nor the Lee royalty owners had any of the rights upon which the decisions in those cases were based. DeMontrond and the Lee royalty owners were merely to be paid for their transferred allowables in proportion to the additional production allowed as a result of those transfers. Not only had they no right or interest in the oil produced but, according to the only witness in the case, the payments to them were not, strictly speaking, based upon production since they were to be paid even though production did not use up the entire daily allowables.

The petitioner points out numerous cases in which persons entitled to payments based upon oil production have no economic interest in the oil in place and no right to depletion. The case most nearly in point which has come to light is that of *Southwest Exploration Co.*, 18 T. C. 961, affirmed per curiam 220 F. 2d 58. The petitioner there

was engaged in the production of oil from offshore properties but was not permitted to conduct its drilling operations from the water and had to obtain drill sites on land. It agreed to pay the owners of its drill sites an amount equal to 24½ per cent of its net profits from the operation. The holding was that the drill site owners acquired no economic interest in the oil properties and the payments to them were not rent or royalties which reduced the petitioner's "gross income from the properties" under section 114 (b) (3). The Commissioner argues that the case is not in point because the owners of the drill sites owned no oil properties in the same field, whereas here DeMontrond and the Lee royalty owners had interests in oil properties in the same field as the Owens and Reid leases. That is a factual difference but, nevertheless, the case is somewhat analogous.

DeMontrond and the Lee royalty owners had no economic interest in the Owens and Reid leases, and the payments to DeMontrond and the Lee royalty owners for the transfer of their allowables to the petitioner were not rents or royalties paid or incurred by the petitioner in respect of the Owens or Reid properties within the meaning of section 114 (b) (3).

Reviewed by the Court.

*Decision will be entered under Rule 50.*