JOHN DAVID HAWN AND BETTE HAWN, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40246.    Filed December 23, 1954.

*Marvin K. Collie, Esq.,* and *John G. Heard, Esq.,* for the petitioners.

*W. B. Riley, Esq.,* for the respondent.

518

519

**OPINION.**

BLACK, *Judge:* Petitioner states the issues in his brief, as follows:

The primary issue in this proceeding is whether, for Federal income tax purposes, the consideration received during the calendar year 1949 by Petitioner

John David Hawn in exchange for an oil payment constituted long-term capital gain proceeds, or whether such proceeds constituted ordinary income subject to depletion.

The second and subsidiary issue is the extent of the consideration received by and taxable to Petitioner John David Hawn during the calendar year 1949 in connection with the exchange of such oil payment.

With reference to the primary issue stated by petitioner as above, respondent contends that the consideration received by petitioner for the assignment of an in-oil payment right carved out of a larger in-oil payment right, such consideration not being pledged for use in further development, is ordinary income subject to the depletion allowance, not capital gain as contended by petitioner.

There is no difference between the parties as to the oil payment owned by petitioner in the original amount of $1,000,000 being a capital asset under the provisions of section 117, Internal Revenue Code of 1939. Respondent's contention is not directed toward a holding that such oil payment right owned by petitioner was not a capital asset. His contention, rather, is that the transactions between petitioner and Hinman did not add up to a transfer of any part of such right to Hinman but that what was done amounted to a mere assignment of income and that the income when received by Hinman was taxable to petitioner, notwithstanding such assignment, under the doctrine of such cases as *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Eubank*, 311 U. S. 122; and *Helvering* v. *Horst*, 311 U. S. 112.

Respondent, in support of his determination, strongly relies on G. C. M. 24849, 1946–1 C. B. 66. The headnote of that G. C. M. reads as follows:

Consideration received for the assignment of a short-lived in-oil payment right carved out of any type of depletable interest in oil and gas in place is ordinary income subject to the depletion allowance where such consideration is not pledged for use in further development.

In the course of this G. C. M. it is said as follows:

In-oil payment rights, royalty rights, and operating rights are analogous in that they are essentially rights to production income characterized as ordinary income when realized. All are regarded as depletable economic interests in oil and gas in place entitling the owner to tax-free return of his investment through the depletion allowance. In-oil payment rights are distinguishable from royalty interests and operating rights in that the latter interests, by definition, extend to the entire oil and gas resource content of the land and, as such, represent forms of fractional property rights into which the property interests in oil and gas in place are commonly divided, whereas an in-oil payment right is a right to income for a limited time or amount. This difference is emphasized by the fact that an in-oil payment right may be carved out of either of the specified property interests in oil and gas in place, but the reverse is not true. Thus, sales of royalty rights or operating rights are sales of property rights, whereas assignments of in-oil payment rights carved out of such property rights, are, with

respect to the assignor, essentially mere assignments of expected income from such property rights for a fixed or determinable period of time.

Later on, the foregoing G. C. M. was clarified by I. T. 4003, 1950–1 C. B. 10, in the following manner:

After careful study and considerable experience with the application of G. C. M. 24849, *supra*, it is now concluded that there is no legal or practical basis for distinguishing between short-lived and long-lived in-oil payment rights. It is, therefore, the present position of the Bureau that the assignment of any in-oil payment right (not pledged for development), which extends over a period less than the life of the depletable property interest from which it is carved, is essentially the assignment of expected income from such property interest. Therefore, the assignment for a consideration of any such in-oil payment right results in the receipt of ordinary income by the assignor which is taxable to him when received or accrued, depending upon the method of accounting employed by him. Where the assignment of the in-oil payment right is donative, the transaction is considered as an assignment of future income which is taxable to the donor at such time as the income from the assigned payment right arises.

It will be noted that in the foregoing I. T. it is said: "Where the assignment of the in-oil payment right is donative, the transaction is considered as an assignment of future income which is taxable to the donor at such time as the income from the assigned payment right arises."

Recently our Court had before it the case of *Lester A. Nordan*, 22 T. C. 1132, which involved a donative transfer of an oil payment right. In that proceeding the facts may be briefly stated as follows: The taxpayers had executed a deed of gift to a church of an oil payment having a face value of $115,000 but which had a fair market value on the date of gift of $111,925.95. The taxpayers claimed a deduction of that amount on their 1949 return as a charitable contribution on the ground that they had made a completed gift of the oil payment. The Commissioner in determining the deficiency disallowed the deduction. He explained that the deduction "was based upon the donative in-oil assignment of $115,000" to the church which received no payments during 1949 and "you donated only a right to share in future income." The Commissioner added $109,825 to the taxpayers' income in the following year, 1950, and allowed a like amount as a charitable deduction and $30,201.87 as depletion on that income. Under these facts, we held that the taxpayers' contribution was deductible under section 23 (c) of the 1939 Code in the year of transfer, 1949, even though payments from production were not available until the next year. In other words, we held in the *Nordan* case, *supra*, that the taxpayers had made more than a mere assignment of income to the church; they had, in the taxable year 1949, made a transfer of the property itself which produced the income in the following year and they were entitled to the deduction of the fair market value

of their gift in the year when the transfer of the oil payment was made. They were not the owners of the oil payment in the following year, 1950, when the new owner made collection of it.

In *T. W. Lee*, 42 B. T. A. 1217, affd. 126 F. 2d 825, cited by us in the *Nordan* case, *supra*, after quoting the Supreme Court's decision in *Anderson* v. *Helvering*, 310 U. S. 404, we stated the principle involved as follows:

It seems clear * * * that the Supreme Court regards any oil payment right (a right to a specified sum of money payable only out of a specified percentage of oil or the proceeds received from the sale of such oil, if, and when produced) as an economic interest in oil in place, the holder thereof being the owner of the share of gross income from production represented by the payments to him and being entitled to the attending depletion allowance.

While our decision in the recent *Nordan* case, *supra*, involved an oil payment which had been transferred as a gift and the instant case involves one which had been transferred for a valuable consideration, we do not see any distinction in principle between the consequences of the two transfers insofar as the issue, whether the transfer was of property itself as the taxpayers contend or a mere assignment of income as the Commissioner contends, is concerned. In the *Nordan* case the deed provided that as soon as the $115,000 had been received by the church from the production under the leases the conveyance would expire and title to the remaining oil, gas, and minerals under the land would revert to the grantors. In the instant case the conveyance of the oil payment from petitioner to Hinman provided:

I, John David Hawn, to [sic] hereby GRANT, SELL, TRANSFER, ASSIGN and CONVEY unto the said A. E. Hinman all of my right, title and interest in and to said oil payment above described until the said A. E. Hinman shall have received from the proceeds of the sale of said interest in said oil the sum of One Hundred Twenty Thousand ($120,000.00) Dollars, whereupon the interest herein conveyed to said A. E. Hinman shall terminate and revert to and revest in said John David Hawn, * * * without the necessity of the execution of any character of release or reconveyance.

What happened in the instant case, as we view it, is briefly this: For a valuable consideration, namely, Hinman's contract to build him a residence, petitioner transferred to Hinman an oil payment. Thereafter, Hinman was the owner of the oil payment until he had collected $120,000, when it was to revert to petitioner. In 1949, the taxable year which we have before us, Hinman collected $12,782.53 from the oil payment. That amount was gross income to him from oil production and he was entitled to depletion. It was not income to petitioner. *T. W. Lee, supra*. In the same year Hinman paid to petitioner from whom he had acquired the oil payment, $20,809.79. This was part payment to petitioner for the capital asset which

Hinman had purchased from petitioner and the gain realized therefrom is taxable as capital gain. Sec. 117, Internal Revenue Code of 1939.

We hold for petitioner on the first issue.

With respect to the second issue respondent concedes error. In his brief respondent says:

Respondent here concedes that petitioners realized and received during 1949 only $20,809.79, of the consideration due them for the assignment of the oil payment. No greater amount should be included in their income for said year.

Effect to this concession will be given in a computation under Rule 50. Petitioners are not entitled to any depletion deduction from this $20,809.79. See *Alice G. K. Kleberg*, 43 B. T. A. 277. It is our understanding that petitioners do not claim any deduction for depletion in case we decide the primary issue in their favor. Having decided that issue in their favor, it is clear they are not entitled to any deduction for depletion. They were not the owners of the oil payment which Hinman received.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARUNDELL, *J.*, dissenting: There is no dispute that the oil payments constituted ordinary income and if they had been collected by the taxpayer they would have been taxable to him. But, petitioner assigned his right to collect these oil payments to the extent of $120,000 to a builder in consideration of the latter's erecting a house for petitioner. In the terms of the assignment the oil payments were transferred to the builder until the latter "shall have received from the proceeds of the sale of said interest in said oil the sum of One Hundred Twenty Thousand ($120,000.00) Dollars, whereupon the interest herein conveyed to said A. E. Hinman [builder] shall terminate and revert to and revest in said John David Hawn [petitioner], his heirs, representatives and assigns without the necessity of the execution of any character of release or reconveyance." Approximately 2 years were estimated to pay out the builder for erecting petitioner's house.

It can no longer be successfully argued that one vested with the right to receive income can "escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid." *Harrison* v. *Schaffner*, 312 U. S. 579. See *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122.

The majority seem to think there is a different treatment called for when income from an oil well is assigned and that the assignment of such income constitutes an assignment of a property interest in the corpus from which flows the income assigned even though the amount assigned is limited and is temporary in nature. It is true the Supreme Court has held where the entire interest in the income of a trust was disposed of that the transaction may be regarded as a transfer of the corpus from which flowed the income. *Blair* v. *Commissioner*, 300 U. S. 5. But, this has not been the Court's holding where there has been a temporary disposition of the income from property even though the transfer takes the form of a temporary disposition of the property itself. *Harrison* v. *Schaffner*, *supra.* In all such cases the income has been taxed to the grantor.

In my opinion the oil payments constituted ordinary income to petitioner and should be taxed accordingly.

KERN, OPPER, RAUM, RICE, and BRUCE, *JJ.*, agree with this dissent.