OPINION. Akundell, Judge: The only issue presented is whether the gain realized by the partnership in 1948 upon the sale of the oil payment to Ashland is taxable as capital gain, as petitioners contend, or as ordinary income subject to an allowance for depletion, as respondent has determined. The amount of the gain is not in dispute. It has been stipulated that, if the Court determines that the gain is taxable as capital gain, the estimated cost on June 1, 1948, of producing the oil assigned to Ashland is to be deducted from the proceeds of the sale in determining the amount of the gain. Petitioners contend that the oil payment assignment conveyed an interest in real property which was used by the partnership in its trade or business and held by it for more than 6 months and that, consequently, they are entitled to treat the gain from the sale of the oil payment as long-term capital gain under the provisions of section 117 (j) of the 1939 Code.[1] Petitioners rely, principally, upon Lester A. Nordan, 22 T. C. 1132; John David Hawn, 23 T. C. 516 (on appeal C. A. 5); and Caldwell v. Campbell, (C. A. 5) 218 F. 2d 567. Respondent seeks to distinguish this case from the authorities cited on the ground that here the grantee of the oil payment was a refining company which normally purchased oil from the grantor. He argues that since the partnership was engaged in the business of developing and operating producing properties and since Ashland would normally purchase the oil produced by the partnership, the oil payment assignment should be regarded as a contract by the partnership to sell oil to its regular customer in advance of production. Upon this basis, respondent urges that the transaction merely accelerated the receipt of ordinary income by the partnership. The respondent cites no authority in support of his argument. The basic fallacy in the respondent’s argument is that it fails to give effect to the agreement entered into by the parties. The parties executed an oil payment assignment and not a contract for the sale of oil, if, as, and when produced. In this respect, it is interesting to note that the sale by the partnership of the oil payment was motivated by business necessity and not primarily by tax considerations. Cf. John David Hawn, supra, and Caldwell v. Campbell, supra. The partnership sold the oil payment in order to obtain funds with which to pay partnership debts incurred in the development and operation of its leases. In our opinion, this case is not distinguishable in principle from the authorities relied upon by the petitioners. Respondent recognizes that the interest of a lessee in oil and gas is a real property interest, and he has so ruled in I. T. 3693, 1944 C. B. 272, which was quoted with approval by this Court in Vern W. Bailey, 21 T. C. 678, and Walter A. Henshaw, 23 T. C. 176. The conveyance of an oil payment constitutes a transfer of the grantor’s interest in the oil in place. See Palmer v. Bender, 287 U. S. 551; Anderson v. Helvering, 310 U. S. 404; Ortiz Oil Co., 37 B. T. A. 656, affd. 102 F. 2d 508, certiorari denied 308 U. S. 566; T. W. Lee, 42 B. T. A. 1217, affd. 126 F. 2d 825. It is a transfer of the income-producing property itself and not merely an assignment of income. Lester A. Nordan, supra; John David Hawn, supra; Caldwell v. Campbell, supra. Consequently, the partnership under the oil payment assignment conveyed an interest in real property. There is no dispute that the leases out of which the oil payment was carved were used by the partnership in its trade or business, and that they were held by it for more than 6 months prior to the effective date of the assignment. Accordingly, it is held that the petitioners are entitled to treat the gain from the sale of the oil payment as gain from the sale of a capital asset under the provisions of section 117 (j) of the 1939 Code. The respondent’s determination is reversed. Decision in Doclcet No. JJ8$71¡. will be entered for the petitioners. Decision in Doclcet No. B1¡.B9% will be entered ymder Rule B0. SEC. 117. CAPITAL GAINS AND LOSSES. (j) Gains ano Losses From Involuntary Conversion and Prom thb Sale or Exchange of Certain Property Used in the Trade or Business. — ■ (1) Definition of property used in the trade or business. — Eor the purposes of this subsection, the term “property used in the trade or business” means * * * real property used in the trade or business, held for more than 6 months, ■which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or * * * (2) General rule. — If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade'or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months.